Filed 11/25/24  P. v. Duncan CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B330236 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA009892) |
| v. | |
| IAN SHAYNE DUNCAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge.  Affirmed.

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

_____

In 1993 Ian Shayne Duncan and codefendant Jude C. DeJesus were convicted of first degree murder. The jury also found true several special allegations, including as to Duncan that the murder was committed during a robbery and a principal was armed with a firearm. We affirmed the judgments. (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 33-34 (*DeJesus*).)

In 2022 Duncan filed a petition for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1] After appointing counsel for Duncan, the superior court denied the petition, finding Duncan failed to make a prima facie showing he was entitled to relief. Duncan contends on appeal that the jury instructions given could have allowed the jury to convict him of first degree murder without finding he had an intent to kill. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Evidence at Trial and Duncan's Conviction[2]*

Duncan's friend Corey Lohr testified Duncan was "an admitted dealer in illegal weapons." Lohr stated that in February 1992 Duncan asked Lohr if he would kill someone for $500. Duncan explained the victim was "some punk" who had "ripped him off." Lohr replied he needed to think about it. Duncan brought up the subject multiple times over the next week, telling Lohr he knew Lohr needed the money and suggesting possible methods and locations for the murder. During one conversation Duncan told Lohr the potential victim

---

[1]    Further statutory references are to the Penal Code.

[2]    We provide a summary of the facts as set forth in *DeJesus* for background only.

was Justin Zeitsoff, whom Lohr had met at Duncan's house a few weeks earlier when Zeitsoff purchased weapons from Duncan. When Lohr attempted to talk Duncan out of the murder, Duncan repeatedly stated Zeitsoff "was a 'punk' whom he wanted dead."

Lohr eventually told Duncan he would not kill Zeitsoff. Duncan responded that, if Duncan had to do it himself, he would give Lohr only $250 for helping to dispose of the body. Later that day, DeJesus visited Duncan's home and asked Duncan if he had any jobs DeJesus could do. Duncan asked DeJesus to kill Zeitsoff, and DeJesus agreed. Duncan then arranged to have Zeitsoff come over to Duncan's home that evening, telling Zeitsoff he could pick up some weapons. Duncan told DeJesus that, when Zeitsoff arrived, Duncan would have Zeitsoff stand in a particular spot. Then Duncan would give DeJesus the signal to shoot Zeitsoff.

Zeitsoff arrived at Duncan's home around 9:30 p.m. on February 19, 1992. Lohr went into the bathroom because he did not want to see the murder. About a minute after Zeitsoff entered the house, Lohr heard approximately six gunshots. Duncan came to the bathroom door and told Lohr to stuff a rag in Zeitsoff's mouth because he was moaning. Lohr found Zeitsoff slouched against a wall in the backyard. After Duncan took the jewelry, clothing, and stereo equipment from Zeitsoff's pockets and car, Duncan instructed Lohr to help him move the body from the backyard to the trunk of Zeitsoff's car. They then drove Zeitsoff's car, with his body in the trunk, to another location.

Later that day, Duncan and DeJesus told Lohr that DeJesus shot Zeitsoff once, Zeitsoff fell down, and Duncan and DeJesus thought Zeitsoff was dead. Zeitsoff then got up and ran

3

to the backyard where he tried to climb a wall. Duncan pulled him down, and DeJesus shot him again.

Duncan and DeJesus testified in their defense. Duncan denied asking Lohr or DeJesus to kill Zeitsoff. Duncan claimed Zeitsoff came to his house unexpectedly on February 19 and they argued briefly. At some point, Zeitsoff and DeJesus were handling guns. DeJesus testified Zeitsoff pointed a gun at him and DeJesus shot Zeitsoff in self-defense. However, DeJesus also testified his gun fired accidentally. According to Duncan and DeJesus, after being shot, Zeitsoff chased Duncan into the backyard and DeJesus fired several shots at Zeitsoff in defense of Duncan.

The jury found Duncan and DeJesus guilty of first degree murder (§ 187, subd. (a)). As to both defendants the jury found true the special allegations the murder was intentional and carried out for financial gain (§ 190.2, subd. (a)(1)) and was committed while lying in wait (§ 190.2, subd. (a)(15)). As to Duncan the jury found true the special allegations the murder was committed during a felony (robbery) (§ 190.2, subd. (a)(17)) and a principal was armed with a firearm (§ 12022, subd. (a)(1)). As to DeJesus the jury found true the allegation he personally used a firearm in the commission of the murder (§ 12022.5, subd. (a)). The trial court sentenced Duncan to life without the possibility of parole. We affirmed the judgment but remanded for the trial court to determine the appropriate presentence credits to be awarded to Duncan. (*DeJesus*, *supra,* 38 Cal.App.4th at pp. 7-8, 33-34.)

B.  *Duncan's Petition for Resentencing*
On June 1, 2022 Duncan filed a petition for writ of habeas corpus seeking relief based on "the recent passage of . . . Senate

4

Bill No. 1437" and arguing "the trial record fails to show that Petitioner was either a major participant in perpetrator's acts or that he acted with reckless indifference to human life." The superior court construed the petition as a petition for resentencing pursuant to former section 1170.95.

The superior court appointed counsel for Duncan, and the People filed an opposition. In their opposition the People explained the jury had not been instructed on felony murder or the natural and probable consequences theory and argued Duncan was ineligible for relief because the "jury's special circumstance findings show that it necessarily found beyond a reasonable doubt that the petitioner, at a minimum, had the intent to kill." During oral argument Duncan's counsel conceded the jury had not been instructed on felony murder or the natural and probable consequences theory. However, Duncan's counsel argued the wording of the instructions on aiding and abetting and homicide could have allowed the jurors to impute malice to Duncan based on his participation in the robbery.

Following oral argument, the superior court summarily denied the petition for resentencing without issuing an order to show cause. The court explained that absent instructions on felony murder and the natural and probable consequences theory, the jury would not have been able to find Duncan guilty of first degree murder without finding an intent to kill. Accordingly, the court found Duncan did not make a prima facie showing that he was entitled to relief. Duncan timely appealed.

## DISCUSSION

A.  *Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule.  (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848; see *People v. Reyes* (2023) 14 Cal.5th 981, 984.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e).  (*Reyes*, at p. 986; *Gentile*, at pp. 842-843.) Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (the felony-murder special-circumstance provision) (§ 189, subd. (e)(3)).  (See *Strong*, at p. 708.)

Senate Bill 1437 also provided a procedure in former section 1170.95, now codified in section 1172.6, for an individual convicted of felony murder or murder under the natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining

counts if the individual could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (*People v. Lewis, supra*, 11 Cal.5th at p. 959; *People v. Gentile, supra*, 10 Cal.5th at p. 847.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court must appoint counsel to represent the petitioner upon a request pursuant to section 1172.6, subdivision (b)(3).  Further, upon the filing of a facially sufficient petition, the court must determine whether the petitioner has made a prima facie showing of entitlement to relief.  (See § 1172.6, subd. (c).)  Where a petitioner makes the requisite prima facie showing the petitioner falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts.  (*Id*., subds. (c) & (d)(1).)

We review de novo whether the superior court properly denied the petition at the prima facie review stage under section 1172.6, subdivision (c).  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *People v. Lopez* (2022) 78 Cal.App.5th 1, 14 [denial at the prima facie review stage "'"is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law,'"' which "'"is a purely legal conclusion . . . we review de novo"'"'"].

B.     *Duncan Is Ineligible for Resentencing as a Matter of Law*

It is undisputed the jury found Duncan was not the actual killer as evidenced by the true finding as to Duncan that a

7

principal was armed and the true finding with respect to DeJesus that he personally used a firearm. Duncan argues he is eligible for resentencing because the jury instruction on aiding and abetting (the only instruction given on derivative liability) and the instruction on murder did not require the jury to find he aided and abetted the actual killer with the intent to kill. Duncan's contention lacks merit.

The trial court instructed the jury on direct aiding and abetting with a modified version of CALJIC No. 3.01, which stated in part: "A person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime."

The jury was instructed on the definition of murder with a modified version of CALJIC No. 8.10, which stated in part: "Every person who unlawfully kills a human being with malice aforethought or during the commission or attempted commission of a robbery . . . is guilty of the crime of murder in violation of Section 187 of the Penal Code."

Duncan contends that given the language of these instructions, the jury could have found his conviction for aiding and abetting the murder was based on a finding he intended to aid and abet DeJesus in the robbery and the murder occurred during the commission of the robbery, without a finding of malice aforethought. We agree that the jury, considering only these two instructions, could have found Duncan guilty of aiding and abetting murder without finding an intent to kill. The jury here, however, found Duncan was guilty of first degree murder, which

8

required the jury to consider additional instructions regarding malice, first degree murder, and second degree murder.

The court instructed the jury on the definition of malice with CALJIC No. 8.11, which stated in part: "'Malice' may be either express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life."[3]

The jury was also instructed with CALJIC No. 8.20, which stated in part: "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree." Regarding second degree murder, the jury was instructed with CALJIC No. 8.30: "Murder of the second degree is also the unlawful killing of a human being with malice aforethought when there is manifested an intention unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation."

Based on these instructions, to find Duncan guilty of first degree murder, the jury must have found Duncan aided and abetted DeJesus in a willful, deliberate, and premeditated killing with express malice aforethought. And express malice was defined to require "an intention unlawfully to kill a human being." (CALJIC No. 8.11.) The trial court did not give any other instruction pursuant to which the jury could have found Duncan

---

[3]     We have not included the brackets in the typed jury instructions given to the jury.

9

guilty of first degree murder. Had the jury found Duncan harbored only implied malice based on his intent to aid and abet a robbery, as Duncan argues, then the jury was required to find him guilty of second degree murder. Because the finding of first degree murder necessarily meant the jury found Duncan harbored an intent to kill, he is ineligible for resentencing. (See *People v. Williams, supra*, 86 Cal.App.5th at p. 1256 [defendant was ineligible for resentencing on first degree murder conviction because "the jurors were instructed that they could only convict Williams of first degree murder if they found he had committed that crime as a direct perpetrator or based on aiding and abetting either premeditated and deliberate malice aforethought murder, or murder perpetuated by a drive-by shooting with intent to kill"].)

Duncan's additional argument that he was eligible for resentencing because the special circumstances instruction was ambiguous is unavailing. The jury was instructed with a modified version of CALJIC No. 8.80, which stated in part: "If you find a defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances: are true or not true . . . . [¶] . . . [¶] If you find beyond a reasonable doubt that the defendant was either the actual killer or an aider or abettor, but you are unable to decide which, then you must also find beyond a reasonable doubt that the defendant with intent to kill aided and abetted an actor in commission of the murder in the first degree, in order to find the special circumstance to be true."

Duncan relies on the decisions in *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 181 (*Letner and Tobin*) and *People v. Ervin* (2021) 72 Cal.App.5th 90, 108 (*Ervin*), in which the courts

held the special circumstance instructions were ambiguous regarding the intent required of an aider and abettor or a co-conspirator. In *Letner and Tobin*, the jury was instructed with a version of CALJIC No. 8.80 that was substantially similar to the version given in this case. The instruction told the jury that "if it determined one of the defendants was the actual killer, intent to kill was not required" and that "if it could not decide whether one of the defendants was the actual killer or an aider and abettor, it must find intent to kill in order to make a true finding." (*Letner and Tobin*, at p. 181.) However, the jury was not informed what intent they were required to find if they *unequivocally* found defendant was an aider and abettor. "The omission of this third alternative made the instruction ambiguous." (*Ibid.*) "The flaw in this instruction . . . is that it failed to instruct the jury explicitly that, under then-existing law, an aider and abettor must have had the intent that the victim be killed in order for the special circumstance allegation to be true." (*Id.* at pp. 180-181.)

While this same flaw was present in the version of CALJIC No. 8.80 given here, unlike in *Letner and Tobin,* the jury in this case could not have found the special circumstances allegations to be true without finding Duncan had the intent to kill. In *Letner and Tobin*, the jury was instructed on felony murder, which (at the time) allowed the jury to find the defendants guilty of first degree murder without finding intent to kill. (*Letner and Tobin, supra*, 50 Cal.4th at pp. 168-169.) Thus, the finding of first degree murder in that case did not necessitate a finding of intent to kill, and the ambiguity in CALJIC No. 8.80 was relevant to whether the jury found the defendants had an intent to kill. In this case, as discussed, the jury's first degree murder finding

11

necessarily included a finding of intent to kill, and any ambiguity in CALJIC No. 8.80 is immaterial.

The Court of Appeal in *Ervin, supra*, 72 Cal.App.5th 90 focused on a different ambiguity in the special circumstances jury instructions. The Court of Appeal in that case reversed the trial court's order denying a petition for resentencing under section 1170.95, concluding the jury's felony-murder special circumstance finding did not render the defendant ineligible for resentencing. (*Ervin*, at p. 111.) The court explained, "The felony-murder special circumstance generally requires the jury to find a defendant aided and abetted '*any actor* in the commission of murder in the first degree,' while the current felony-murder rule more specifically requires the jury to find a defendant aided and abetted '*the actual killer* in the commission of murder in the first degree.'" (*Id*. at p. 106.) The court continued, "[G]iven the prosecutor's closing argument and the jury's inconsistent verdicts, it is possible the jurors misinterpreted the 1993 instruction to mean they could find the felony-murder special-circumstance allegation true if they generally found Ervin aided and abetted *another* in the commission of the robbery or burglary (that ultimately led to the killing of a human being), rather than a more specific finding that Ervin aided and abetted 'the actual killer . . . with the intent to kill.'" (*Id*. at pp. 108-109.)

Although CALJIC No. 8.80 as given here also referred to aiding and abetting "an actor" in commission of a murder, the issue does not affect Duncan's eligibility for resentencing. As in *Letner and Tobin,* in *Ervin* the jury had been instructed on felony murder. (*Ervin, supra*, 72 Cal.App.5th at pp. 102-103.) Thus, it was possible the jury in *Ervin* found the defendants guilty of first degree murder without finding they had an intent to kill. As

12

discussed, such a result was not possible in this case where the only way the jury could find Duncan guilty of first degree murder was to find he had an intent to kill.

## DISPOSITION

The order denying Duncan's section 1172.6 petition is affirmed.

FEUER, J.

We concur:

MARTINEZ, P. J.

STONE, J.